REQUESTED BY: Senator William E. Barrett Member of the Legislature State Capitol Building Lincoln, Nebraska 68509
Dear Senator Barrett:
In your letter of May 20, 1981, you ask our opinion as to the constitutional validity of Section 2 of LB 376, as amended. You also call our attention to the fact that there are only six legislative days left in this session, and urged our immediate response. We will do our best, but we call your attention to the fact that this is a quite complex and confusing bill, and that we have not had the time to give this matter the attention it deserves.
Section 2 of the bill amends Neb.Rev.Stat. § 8-903 (Reissue 1977). This is a part of the Bank Holding Company Act of 1963, §§ 8-901 to 8-904. Section 8-902(3) defines a bank holding company in general terms as any company which owns or controls two or more banks. Section 8-903, as it now reads, makes unlawful any action taken after March 12, 1963, which results in a company's becoming a bank holding company, as defined by the act, and also makes it unlawful for a bank holding company operating in this state to acquire ownership or control of 25 per cent or more of the voting shares of any bank operating in this state.
Section 8-903 therefore gave grandfather rights to bank holding companies operating before March 12, 1963, but forbade them to acquire any additional banks after the effective date of the act. We are informed by the Department of Banking and Finance that there is only one bank holding company, as defined in § 8-902, in this state, and that it is an out-of-state bank holding company, owning or controlling five banks in this state. There are, however, a large number of one bank holding companies, as defined in § 8-1202, all of them Nebraska corporations.
We find some of the language of Section 2 of the bill confusing. It still provides that it shall be unlawful for any action to be taken after March 12, 1963, which results in a company's becoming a bank holding company, as defined in § 8-902. This, of course, requires it to own or control two or more banks. Section 2 then goes on to provide that `a bank holding company or a company which owns only one bank which is not a bank holding company as defined in 8-902' shall have the right to acquire more banks, thereby becoming a bank holding company, as defined in § 8-902. Exactly what companies are intended to be covered by that provision is not clear. There are no `bank holding companies,' as defined in § 8-902, except the out-of-state bank holding company, which is specifically covered under another subdivision of Section 2. One bank holding companies as defined in § 8-1202 are also covered under another subdivision. We are not sure what was intended to be covered by subsection (1), quoted above. We think there has been some blurring of the distinction between bank holding companies, as defined by § 8-902, and one bank holding companies as defined in 8-1202. Furthermore, the prohibition against formation of bank holding companies, as defined in § 8-902, becomes meaningless, as the bill clearly provides for formation of new ones.
Your specific question is the propriety of the specific provisions made for existing out-of-state bank holding companies, as defined in 12 U.S.C. § 1842(d), and which on December 31, 1978, owned at least two banks in this state. You suggest that this would create a permanently closed class, presumably because it would prevent other out-of-state companies from ever coming into this state as bank holding companies.
Despite the prohibition against closed classes, the courts have frequently upheld statutes creating grandfather rights for those already engaged in a business. Section8-902, as it now reads, creates grandfather rights in bank holding companies in existence on March 12, 1963.
In the case of Iowa Independent Bankers v. Board ofGovernors of the Federal Reserve System, 511 F.2d 1288
(D.C. Cir. 1975), the court dealt with the very question you have raised. An Iowa statute forbade an out-of-state bank holding company to acquire any interest in an Iowa bank, unless the company on January 1, 1971, was registered with the Federal Reserve Board as a bank holding company, and on that date owned at least two banks in Iowa. The court rejected equal protection and unreasonable classification attacks on the statute, and said:
 We think it is perfectly rational for the Iowa legislature to determine that Northwest, the only out-of-state bank holding company that has a pre-existing stake in the Iowa banking system and has proven itself to be a positive force in the system, should be allowed to compete on the same basis as other Iowa banks, but also to decide that the state would not be well served if out-of-state bank holding companies were allowed wholesale entry into the Iowa market.
The court held the statute did not violate the equal protection clause of the Fourteenth Amendment, nor the prohibitions of the Iowa Constitution against special legislation and the granting of exclusive privileges and immunities. The Iowa constitutional provisions are comparable to those found in Article I, Section 16, and Article III, Section 18 of our constitution.
On its face, the bill might appear to discriminate unreasonably in favor of existing out-of-state bank holding companies and against domestic bank holding companies, since existing out-of-state companies can own or control five banks until January 1, 1983, and can acquire one more per year up to a maximum of nine on December 31, 1986, whereas other bank holding companies can own only three prior to January 1, 1983, and cannot own nine until 1988. If there were now any existing domestic bank holding companies, as defined in § 8-902, they might argue that they were unreasonably discriminated against. However, since there is none, we believe the Legislature can take cognizance of that fact in drafting legislation. In Iowa Independent Bankers,supra, the court said the legislature could take the actual facts into consideration, and said: `We do not think that the Iowa legislature, dealing as it must with the realities of the Iowa banking structure, must draw its statutes to encompass hypothetical situations that could never bear the fruits of reality.'
The bill therefore makes one class of the bank holding company now in the state, and another class of those who will come into existence under LB 376. The one in existence can continue to hold its five banks. The others can acquire up to three before January 1, 1983. After that both classes can acquire one new bank per year, up to a maximum of nine. Since the one now in existence has a head start, it can acquire its nine two years earlier than the others. Under the facts, we believe no unreasonable classification is involved.
We are somewhat confused as to the significance of the date December 31, 1978, as of which date the out-of-state bank holding company was required to own at least two banks in this state. Since the existing bank holding company has held five banks since 1963, it would appear to have been more reasonable to have said `on the effective date of this act,' instead of December 31, 1978. We do not, however, feel that this has any particular constitutional significance.
We are therefore of the opinion that, while the statute, as it would be amended by LB 376, is somewhat confusing, it can be defended against constitutional attack.
Very truly yours, PAUL L. DOUGLAS Attorney General Ralph H. Gillan Assistant Attorney General